**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **BLITZSAFE TEXAS, LLC,** | § § | Case No. 2:19-cv-00403-JRG |
| Plaintiff, | § § § | |
| v. | § § | **JURY TRIAL DEMANDED** |
| **NAVISTAR, INC. and NAVISTAR INTERNATIONAL CORP.,** | § § § § | |
| Defendant. | § | |

**E-DISCOVERY ORDER**

The Court ORDERS as follows:

1. This order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

2. This order may be modified in the court's discretion or by agreement of the parties.

3. A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

4. Absent a showing of good cause, general ESI production requests under Federal Rules of Civil Procedure 34 and 45, or compliance with a mandatory disclosure requirement of this Court, shall not include metadata. However, fields showing the date and time that the document was sent and received, as well as the complete distribution list, shall generally be included in the production if such fields exist.

5. Absent agreement of the parties or further order of this court, the following parameters shall apply to ESI production:

A. **General Document Image Format**. Except as otherwise provided for in this Order, all documents existing in electronic format shall be produced as specified in Production Specifications for ESI listed in Exhibit A.

B. **Footer**. Each document image shall contain a footer with a sequentially ascending production number.

C. **Native Files**. A party that receives a document produced in a format specified above may make a reasonable request to receive the document in its native format, and upon receipt of such a request, the producing party shall produce the document in its native format. Documents produced natively shall be represented in the set of imaged documents by a slipsheet indicating the production identification number and confidentiality designation for the native file that is being produced.

D. **No Backup Restoration Required.** Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case.

E. **Voicemail and Mobile Devices.** Absent a showing of good cause, voice-mails, PDAs and mobile phones are deemed not reasonably accessible and need not be collected and preserved.

F. **Production media and encryption of productions.** Unless otherwise agreed, the parties shall provide document productions in the following manner: The producing party shall provide the production data on CDs, DVDs, external hard drives, flash drives, or SFTP, as appropriate. The producing party shall encrypt the production data using WinRAR or other similar encryption, and the producing party shall forward the password to decrypt the production data separately from the CD, DVD,

        external hard drive, flash drive, or SFTP to which the production data is saved.

    G.    **Source code.** This Order does not govern the format for production of source code, which shall be produced pursuant to the relevant provision of the Protective Order.

    H.    **Databases.** Certain types of databases are dynamic in nature and will often contain information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Thus, a party may opt to produce relevant and responsive information from databases in an alternate form, such as a report or data table. These reports or data tables will be produced in a static format. The parties agree to identify the specific databases, by name, that contain the relevant and responsive information that parties produce.

    I.    **Foreign language documents.** All documents shall be produced in their original language. Where a requested document exists in a foreign language and the producing party also has an English-language version of that document that it prepared for non-litigation purposes prior to filing of the lawsuit, the producing party shall produce both the original document and all English-language versions. In addition, if the producing party has a certified translation of a foreign-language document that is being produced, (whether or not the translation is prepared for purposes of litigation) the producing party shall produce both the original document and the certified translation. Nothing in this agreement shall require a producing party to prepare a translation, certified or otherwise, for foreign language documents that are produced in discovery.

6.    General ESI production requests under Federal Rules of Civil Procedure 34 and 45, or compliance with a mandatory disclosure order of this court, shall not include e-mail or other forms of electronic correspondence (collectively "e-mail").

7. The parties shall meet and confer to reach agreement on whether e-mail production is appropriate. If the parties determine that e-mail production is appropriate, they shall then meet and confer to reach agreement on a reasonable list of custodians for purposes of collection, review, and production of electronically stored information as well as a schedule for the production of such information. In connection with the meet and confer process, each party shall provide a proposed list of individual custodians who are knowledgeable about and were involved with the core issues or subjects in this case (e.g., the asserted patents, the development, design and operation of the accused products, and sales, marketing and other damages-related information for the accused products). The parties shall make good faith efforts to identify appropriate email custodians and produce email on the agreed upon schedule, but they may reserve the right to seek email from additional email custodians identified through discovery. Should the parties not reach agreement on whether e-mail production is appropriate after an attempt to meet and confer, the Party seeking e-mail production may seek relief from the Court as appropriate.

8. If the parties agree to engage in e-mail production or if e-mail production is ordered by the Court, e-mail production requests shall be phased to occur timely after the parties have exchanged initial disclosures, infringement contentions and accompanying documents pursuant to P.R. 3-1 and 3-2, and invalidity contentions and accompanying documents pursuant to P.R. 3-3 and 3-4. The exchange of this information shall occur at the time agreed upon by the Parties and/or required under the Federal Rules of Civil Procedure, Local Rules, or by order of the court. Each requesting party may also propound up to five written discovery requests and take one deposition per producing party to identify the proper custodians, proper search terms, and proper time frame for e- mail production requests. The court may allow additional discovery upon a showing of good cause.

9. E-mail production requests shall identify the custodian, search terms, and time frame.

        The court shall consider contested requests for additional or fewer custodians per producing party, upon showing a distinct need based on the size, complexity, and issues of this specific case.

10. The parties shall meet and confer to reach agreement on search terms to be used for electronic searches of the files from custodians. ESI, including, but not limited to electronic files and email, shall be collected for each individual custodian from the personal computers, network resources, and other electronic devices that those individuals use for work purposes. Notwithstanding prior agreement on the search terms to be used for electronic searches, should a search produce an unreasonably large number of non-responsive or irrelevant results, the parties shall (at the producing party's request) meet and confer to discuss application of further negative search restrictions (e.g., if a single search was for "card" and ninety percent of the resulting documents came from the irrelevant term "credit card," a negative limitation to ignore documents only returned as a result of "credit card" may be applied to remove these documents). The party receiving production shall not unreasonably oppose such further restrictions designed to filter immaterial search results. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for

       disproportionate discovery.

11. Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of a privileged or work product protected ESI is not a waiver in the pending case or in any other federal or state proceeding.

12. The mere production of ESI in a litigation as part of a mass production shall not itself constitute a waiver for any purpose.

13. Except as expressly stated, nothing in this order affects the parties' discovery obligations under the Federal or Local Rules.

14. Nothing in this Order shall require production of information whose disclosure pursuant to the Protective Order in this action violates any applicable information privacy or data protection laws, including the German Federal Data Protection Act (effective through May 24, 2018), the New German Federal Data Protection Act (effective from May 25, 2018), the German Telecommunications Act of June 22, 2004, Japan's Act on the Protection of Personal Information (APPI) (Act No. 57 of 2003), or Japan's Personal Information Protection Act (PIPA). The Party withholding responsive information under the terms of this Paragraph shall withhold the minimum amount of information possible (e.g., by redacting information from a document rather than withholding the entire document) in order to be in compliance with the aforementioned information privacy or data protection laws. The Party withholding any document (including e-mail) pursuant to this Paragraph shall produce a log disclosing, on a document-by-document basis, (1) the type of information withheld and (2) the applicable information privacy or data protection law that is preventing its disclosure.

15. Nothing in this Order shall prohibit the parties from objecting to production of ESI or emails under Fed. R. Civ. P. 26(b)(1) or (2), or any other applicable Federal Rules or

Court Orders.

**EXHIBIT A**

**PRODUCTION SPECIFICATIONS FOR ESI**

I.  Documents created or stored electronically must be produced in their original electronic format, and not printed to paper or PDF. All electronically stored information ("ESI") shall be produced in electronic form (the "production set").

Each document will have its own unique identifier ("Bates number"), which must be consistently formatted across the production, comprising of an alpha prefix and a fixed length number of digits (e.g., "PREFIX00000001").

The production set shall consist of, and meet, the following specifications:

A. <u>Image Files</u>. All ESI will be rendered to single-page, black and white, Group IV *tagged image file* (".tif" or ".tiff") images with a resolution of 300 dpi, where in the file name for each page is named after its corresponding Bates number. Records in which a color copy is necessary to interpret the document (e.g., photographs, presentations, AUTOCAD, etc.) will be rendered to higher resolution, single-page *joint photographic experts group* (".jpg" or ".jpeg") format. Endorsements must follow these guidelines:

   a. Bates numbers must be stamped on the lower right hand corner of all images.

   b. Confidentiality must be stamped on the lower left hand corner of all images.

   c. Other pertinent language may be stamped on the bottom center, or top of the images, as deemed necessary.

B. <u>Load Files</u>. All ESI must be produced with appropriate data load files, denoting logical document boundaries. The following files should be included within each production set.

   a. A Concordance delimited ASCII text file (".dat").

      i. The .dat file will contain metadata from the original native documents, wherein the header row (*i.e.*, the first line) of the .dat file must identify the metadata fields.

      ii. The .dat file must be delimited with the standard Concordance delimiters (the use of commas and quotes as delimiters is <u>not acceptable</u>):

         ASCII 020 [¶] for the comma character;
         ASCII 254 [þ] for the quote character; and
         ASCII 174 [®] for new line.

      iii. All attachments, or *child* records, should sequentially follow the *parent* record.

   b. Image cross-reference files, *Opticon* image file (".opt") and *IPRO View Load* file (".lfp"), which link images to the database and identifies appropriate document breaks.

   c. link images to the database and identifies appropriate document breaks.

C. <u>Text Files</u>. All ESI will be produced in a word searchable, text file format (".txt"), at the document level for all records. Such text files may be delivered as multi-page ASCII or, where appropriate, Unicode text files and named after its corresponding Bates number. All records must include:

      a. *extracted text* for all ESI, at the document level, wherein the text files must have page breaks that correspond to the pagination of the image file; and/or

      b. *optical character recognition* ("OCR") text, at the document level, for records where: (1) embedded or extracted text does not exist in the electronic document; (2) the document originated in a hard-copy format; and/or (3) OCR must be run on documents so as not to reveal the contents any redacted material.

The text files may be placed in an individual folder, from which the full path for each text file should correspond to its record in the .dat file and populated under the *Text Path* field.

D. <u>Native Files</u>. ESI that cannot be interpreted in an image format, or for such that may be voluminous and burdensome when printed to image files, may be produced in its native format, with its file name corresponding to its designated Bates number. Such files include Microsft Excel, PowerPoint and Access file types, multimedia files (e.g., ".avi", "mpeg", ".wmv", ".mp3", etc.), AUTOCAD files, source code, and other files that may be requested and/or agreed upon by counsel. All native files produced must contain a corresponding image placeholder with appropriate endorsements, as well as extracted text.

**PLAINTIFF'S PROPOSED EXHIBIT B [To be included if Plaintiff's proposed paragraph 4 is adopted.]**

**TABLE OF METADATA FIELDS**

| Field Name | Description |
|---|---|
| BEGDOC | Begin Bates number |
| ENDDOC | End Bates number |
| BEGATTACH | Begin Bates number of family unit |
| ENDATTACH | End Bates number of family unit |
| CUSTODIAN | Individual from whom the document originated |
| PAGECOUNT | Total number of pages in the document |
| FROM | Author of the e-mail message |
| TO | Main recipient(s) of the e-mail message |
| CC | Recipient(s) of "Carbon Copies" of the e-mail message |
| BCC | Recipient(s) of "Blind Carbon Copies" of the e- mail message |
| DOCUMENT SUBJECT | Subject field extracted from the metadata of the native file |
| EMAIL SUBJECT | Subject field extracted from the metadata of an email file |
| DOCUMENT TITLE | The title of a document |
| DOCUMENT AUTHOR | Author field extracted from the metadata of the native file |
| CREATED DATE | Date file was created |
| CREATED TIME | Time file was created |
| FAMILY DATE | Families: Date of the Parent document<br>Single/Loose Files: Date of the Document<br>● Email = Sent Time<br>● Electronic Loose File = Last Mod Time |
| FAMILY TIME | Families: Time of the Parent document<br>Single/Loose Files: Time of the Document<br>● Email = Sent Time<br>● Electronic Loose File = Last Mod Time |
| LAST MODIFIED DATE | Date document was last modified |

| Field Name | Description |
|---|---|
| LAST MODIFIED TIME | Time document was last modified |
| EMAIL SENT DATE | Date email was sent |
| EMAIL SENT TIME | Time email was sent |
| FILE SIZE | File size in bytes |
| EXTENSION | Original extension of a file (null for emails from container) |
| FILE TYPE | File Type: email, image, spreadsheet, presentation, etc. |
| MD5 HASH | Unique identifier of the file |
| FILENAME | Original name of the file or subject of email |
| TEXTLINK | Contains Path to .TXT files |
| NATIVELINK | Contains path to native files |
| CONFIDENTIAL DESIGNATION | Contains confidential designation of a produced document |